STEPHEN J. FITZGERALD, PROSECUTOR, v. THE MAYOR
AND ALDERMEN OF JERSEY CITY.

Submitted December 3, 1902—Decided December 27, 1902.

The expressions in chapter 195 of the laws of 1902—"the common
council or other governing board" (section 1), and "the common
council or other governing body" (section 2)—used with reference
to cities, mean, as applied to Jersey City, its board of aldermen.

On *certiorari.*

On January 17th, 1902, the mayor of Jersey City ap-
pointed a board of excise commissioners, under chapter 346
of the laws of 1894, and such board, as then constituted,
has been ever since continuously in existence.

On October 7th, 1902, the board of aldermen of Jersey
City, by the vote of more than two-thirds of its members,
passed, over the mayor's veto, an ordinance to establish a
board of excise commissioners in that city under chapter 195
of the laws of 1902.

The present writ removes that ordinance, but without stay
of the election consequent thereon.

Before Justices DIXON, COLLINS and HENDRICKSON.

For the prosecutor, *William H. Speer.*

For the defendant, *John W. Queen.*

The opinion of the court was delivered by

COLLINS, J. The statute upon which rests the ordinance
under review is "An act to establish an excise department
in cities of this state," approved April 8th, 1902. *Pamph.
L., p.* 628. Its provisions pertinent to this controversy are
as follows:

"1. In all cities of this state it shall and may be lawful
for the common council or other governing board of said
city to pass, enforce, alter and repeal ordinances to take

effect within said city for the following purposes, to wit, to provide for the establishment of a board of excise commissioners, to consist of five members, to serve for the term of three years, which board shall be elected on a general ticket at the election in such city next after the passage of such ordinance in the same manner as other officers in said city are elected; * * * such board of excise commissioners shall have power within such city to make, establish, amend or repeal ordinances and by-laws, to license and regulate or prohibit inns and taverns, restaurants and beer saloons, and when licensed, to revoke or transfer such license and to prohibit all traffic in or sale of intoxicating drink or drinks, to license, regulate or prohibit billiard saloons and bowling alleys, and to prescribe and enforce a penalty or penalties, either by fine or imprisonment, for the violation of such ordinance or by-laws; * * * every ordinance shall * * * be concurred in by at least two members of such board of excise commissioners as may be present at its final passage; and no other license for such purposes within said city granted by any other authority shall be lawful.

"2. No such ordinance shall be passed or repealed in any city unless two-thirds of the members of the common council or other governing body of such city shall vote therefor.

"3. [Provides for notice of election.]

"4. [Provides for official bond of the excise commissioners elected and that their term shall begin on the 1st day of January next succeeding their election.]

"5. [Repeals all inconsistent acts and parts of acts.]"

In his reasons filed in the cause the prosecutor contends that this statute is too vague and indefinite to be efficacious, and that it permits action by a minority of the board authorized, and is therefore invalid. There is no force in either contention. The act is precise and definite. The provision as to concurrence of two members is merely declaratory of the law that the majority of a quorum of a deliberative body present at a meeting is essential to legal action at that meeting.

The only contention of illegality in the ordinance made

in the brief filed for the prosecutor is that, in Jersey City, the proper board to pass such an ordinance as was passed by the board of aldermen on October 7th, 1902, is not that board, but the board of excise commissioners, appointed by the mayor, January 1st, 1902, under the act of 1894 (*Pamph. L., p.* 531); confirmed April 3d, 1902. *Pamph. L., p.* 460. The argument is that because the board last named has cognizance of excise matters it is the governing board or body contemplated by the authorizing statute, and that, even if Jersey City had a common council, *eo nomine,* it could not act, because any governance it might otherwise have had has passed to the excise commissioners. In other words, the assumption is that the legislature contemplated that, normally, a common council would be the governing board in the premises, but that, if governance of excise matters had been committed to some other board or body, it intended to confer the authority upon that board or body.

The act of 1894 is limited to cities of the first class, and provides for the appointment of a bipartisan board, selected from the two leading political parties, and the confirmatory act continues these restrictions. The constitutionality of this legislation is attacked with much force by the counsel for the defendant, but the questions raised need not be decided, for it is quite plain to us that the board authorized by it is not a governing board or body in the sense of that designation in the statute *sub judice.* Like words may indicate a departmental board, and they are sometimes so used in the legislation of this state. An example may be found in the "Act providing for the paving of any street or avenue or section thereof which forms the boundary line between two adjoining municipalities." *Pamph. L.* 1894, *p.* 348. That act confers power to provide for street paving, in cases within its title, on the "governing bodies" of the respective municipalities. Undoubtedly, by the words quoted, it was meant to convey the meaning that the powers of the act should be exercised by the respective boards that had governance of street paving.

In applying legislation, as to licenses, power conferred on

the governing boards or bodies would, in like manner, have been exercisable by such boards as those existing under the act of 1894 and its confirmatory statute; but to no such board had been committed authority to create an excise department, and so commit self-destruction. There was not, in Jersey City, on April 8th, 1902, any board or body that had governance of the establishment of excise departments; there was simply one which, if constitutionally authorized, had power to administer excise affairs. Therefore we must seek some other meaning for the words "governing board" and "governing body" used in the statute of that date. The natural indication is the general governing body of the corporation identified by the leading words "common council." *Noscitur a sociis.* The use of the word "other" is conclusive that the legislature considered common councils as the governing bodies of cities, in the sense in which the word "governing" was used in the statute, notwithstanding that many governmental powers may, in some cities, as notably in Jersey City, have been vested in other boards. The alternative expression was used in order to include a general board or body not styled a common council—*e. g.,* in Jersey City, the board of aldermen. Such a board has, by law-writers, uniformly been spoken of as the governing body of the corporation, and is the marked characteristic of American cities.

At common law cities were variously organized, some even existing by prescription; but, in general, they had a mayor and a common council composed of aldermen. Dillon says that in this country the normal type created, as all cities must be, by legislative grant, either by special charter or under general laws, is a corporation with a "governing body usually styled the council." This council, he says, is, in some instances, composed of two bodies, the members being called aldermen, councilmen or trustees. *Dill. Mun. Corp.,* § 19. Again, he says: "The council is the governing body of the municipal corporation, and the corporation, unless it is otherwise provided, can act and be bound only through the medium of the council. * * * The usual scheme of

the organization of the council is to divide the territory of the incorporated place into districts or wards, the voters in each of which elect one or more representative, usually called aldermen or councilmen." *Id.,* § 208.

The charters of most of New Jersey cities styled the members of this governing body aldermen and the body itself a common council. This was the case with the original charters of the three cities which were, in 1869, consolidated as Jersey City, viz., Jersey City (*Pamph. L.* 1851, *p.* 392), Hudson (*Pamph. L.* 1855, *p.* 765) and Bergen. *Pamph. L.* 1868, *p.* 314. In the charters of the two cities last named the official title of the governing body was indiscriminately given as board of aldermen and common council. Section 30 of the old Jersey City charter was explicit: "The legislative power of said corporation shall be vested in a mayor and a board of aldermen; the board of aldermen shall constitute and be called the common council." The consolidating act (*Pamph. L.* 1869, *p.* 1377) had this identical provision—section 39. The charter of the next year (*Pamph. L.* 1870, *p.* 1170) simply dropped the *name* common council, but the board of aldermen was, in *fact,* such a body. The reorganizing act of 1871 (*Pamph. L., p.* 1094) conferred many of the normal powers of the board of aldermen upon other boards specially created, but it still remained a common council and the general legislative body of the city. *Jersey City* v. *Keogh,* 24 *Vroom* 520. The powers of the corporation, in the absence of express limitation, remained with it. *Dill. Mun. Corp.,* § 181.

We are of opinion, therefore, that, in Jersey City, the proper board to pass an ordinance to provide for the establishment of a board of excise commissioners in that city, under chapter 195 of the laws of 1902, is the board of aldermen, and the ordinance passed by that board on October 7th, 1902, is affirmed, with costs.